***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties before the Full Commission. The parties have not shown good grounds to reconsider the evidence and the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this case. That *Page 2 
all the parties are bound by and subject to the North Carolina Workers' Compensation Act. That all parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of any party.
2. An employment relationship existed between Plaintiff and Defendant-Employer at all relevant times herein.
3. Defendant-Employer was insured for workers' compensation purposes by Bridgefield Casualty Insurance Company, at all relevant times herein.
4. Plaintiff's average weekly wage was $332.00, with a corresponding compensation rate of $221.31.
5. Plaintiff sustained an admittedly compensable injury by accident while in the course and scope of her employment with Defendant-Employer on July 8, 2008 and as a result of said injury by accident, Defendants accepted Plaintiff's injury to her left knee and denied Plaintiff's claim of injury to her lower back.
6. Plaintiff is no longer employed with Defendant-Employer and has been employed by Family Services Head Start since August 2008.
7. The issues to be determined from this hearing are as follows:
 a. Whether Plaintiff sustained an injury by accident while in the course and scope of the employment with Defendant-Employer to her lower back on July 8, 2008 at the same time she sustained an injury to her left knee?
 b. If so, to what, if any additional benefits is Plaintiff entitled to recover under the North Carolina Workers' Compensation Act?
 c. Whether Plaintiff is entitled to attorney's fees, and/or whether sanctions should be imposed upon Defendants? *Page 3 
8. The following exhibits were admitted into evidence at the hearing before the Deputy Commissioner:
 a. Stipulation #1, Plaintiff's medical records and IC forms, nurse case manager reports and discovery responses of the parties.
 ***********
Based upon the preponderance of the evidence of the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, Plaintiff was 48 years old. Plaintiff has an Associate Degree in Early Childhood Education.
2. Plaintiff began employment as an assistant teacher for A Child's World Learning Center, approximately one (1) year prior to the date of accident.
3. On July 8, 2008, while carrying a child, Plaintiff tripped on a toy and fell onto her left knee. Consequently, Plaintiff injured her left knee and lower back. Immediately after the fall Plaintiff felt pain in her left knee, and numbness and tingling in her left leg.
4. On July 8, 2008, Plaintiff presented to Forsyth Medical Center with complaints of left knee and leg pain, as well as, numbness and tingling. She was referred by the ER physician to Dr. Daniel Biggerstaff of Orthopaedic Specialist of the Carolinas.
5. Plaintiff began treatment with Dr. Daniel Biggerstaff on July 16, 2008. Plaintiff reported pain in her left knee and numbness and tingling in the left leg. Dr. Biggerstaff diagnosed Plaintiff with a left knee contusion, took her out of work for 10-14 days, and prescribed physical therapy. *Page 4 
6. Plaintiff began physical therapy on July 30, 2008, with Brandon Rehabilitation Orthopedic/Sports Physical Therapy, 1-2 times a week for 3-4 weeks for her left knee injury.
7. On August 1, 2008, Plaintiff returned to Dr. Biggerstaff. The medical record reflects that Employee-Plaintiff had improved, however he was concerned with the numbness and tingling in her leg and referred her to Dr. Mitchell Isaac, a neurologist at Cornerstone Health Care.
8. Dr. Isaac's medical record reflects that Plaintiff's neurological exam was "reassuringly normal, except for decreased sensation of her left lower leg." However, she continued to have pain, and presented to Forsyth Medical Center with complaints of pain and numbness of the left knee and left leg.
9. On October 22, 2008, Plaintiff returned to Dr. Biggerstaff for a review of Dr. Isaac's findings. Dr. Biggerstaff although concerned about Plaintiff's numbness in her left leg, believed that she had reached MMI and assigned a 0% permanent partial impairment ("PPI") rating to Plaintiff's left knee. Dr. Biggerstaff was only authorized to treat Plaintiff's left knee injury and not any of Plaintiff's complaints of pain and numbness of the left knee and left leg. The medical record reflects that Plaintiff requested a second opinion.
10. Plaintiff was sent to Dr. Matthew Olin at Greensboro Orthopaedic Center for an Independent Medical Examination ("IME") by Defendants on January 21, 2009. Dr. Olin agreed with Dr. Biggerstaff that Plaintiff had reached MMI as to the left knee injury and retained a 0% rating on the left knee. However, he recommended an MRI of the lumbar spine to rule out stenosis or see if other treatment options were available to treat the back and leg discomfort.
11. On February 2, 2009, Plaintiff presented to Greensboro Radiology for an MRI of the lumbar spine without contrast. The MRI showed disk bulging and a broad based central and *Page 5 
left sided disk protrusion at L5-S1 resulting in lateral recess stenosis and possible encroachment on the S1 nerve root, mild facet degenerative changes at L4-5 and L5-S1, and small uterine fibroids.
12. On February 23, 2009, Plaintiff returned to Dr. Olin for review of the MRI findings. The medical record reflects that Plaintiff would be a good candidate for Selective Nerve Root Block at L5-S1 left sided.
13. In a March 16, 2009 letter to Plaintiff's counsel, Dr. Olin opined that there was definitely a "direct correlation" between Plaintiff's back injury and her fall on July 8, 2008. Dr. Olin further stated, that at that point in Plaintiff's treatment, this was "the only potential etiology."
14. On May 11, 2009, Plaintiff presented to Dr. Peter Whitfield of Sports Medicine and Orthopedics Center for a second opinion regarding her back and left lower extremity. Dr. Whitfield agreed with Dr. Olin that the best approach would be local nerve root injections at L5-S1 or possibly ESI and suggested that she see a physiatrist.
15. On June 19, 2009, Plaintiff was seen at the Surgical Center of Greensboro for her selective nerve root block.
16. Plaintiff returned to Dr. Olin for a follow up after the selective nerve root block on July 13, 2009 and August 24, 2009. Dr. Olin requested that Plaintiff have a surgical consultation with Dr. Brooks. If there was not any surgical consideration he would be ready to release her without an impairment rating. He also considered that she may need another selective nerve root block and another MRI of the cervical spine.
17. On September 24, 2009, Plaintiff presented to Dr. Edward Hill of Salem Neurological Center. Dr. Hill's impression was that her continued back pain did relate to the *Page 6 
accident, at least by history and that there is evidence of a S1 nerve root irritation with sensory loss and discomfort. He recommended an updated nerve conduction study, which discovered some evidence of L-S1 radiculopathy. Dr. Hill opined in his deposition to a reasonable degree of medical certainty that Plaintiff's back injury was related to her July 8, 2008 injury at work.
18. Plaintiff underwent several left SI nerve root blocks between November 20, 2009 and February 26, 2010. On February 26, 2010, Dr. Hill performed another nerve root block, and ordered an x-ray of the L-spine and MRI of the cervical spine. The MRI revealed a broad based central disk protrusion with associated posture hypertrophy changes resulting in left greater than right subarticular/lateral recess stenosis. There was evidence of probable impingement of the transversing left S1 Nerve root within subarticular recess.
19. On April 7, 2010, Dr. Hill felt that Plaintiff needed "to be referred promptly to a spine surgeon or neurosurgeon."
20. On April 26, 2010, Dr. Hill wrote a note that as of April 23, 2010, Plaintiff was taken out of work.
21. On June 16, 2010 Plaintiff presented to Dr. Mark Hnilica, a neurosurgeron. Dr. Hnilica opined that Plaintiff's examination and history are most consistent with diskogenic and referred left S1 greater than L5 pain, because of the L5 transitional disk degeneration with central annular tear.
22. Based upon the preponderance of the evidence of the record and the credible medical evidence of record, the Full Commission finds that Plaintiff's back condition was caused by and is related directly to her admittedly compensable injury by accident of July 8, 2008.
23. Based upon the preponderance of the evidence of the record and the credible medical evidence of record, the Full Commission finds that Plaintiff's low back problems, *Page 7 
including the complaints of numbness, are directly related to her admittedly compensable injury by accident of July 8, 2008.
24. Based upon the preponderance of the evidence of the record and the credible medical evidence of record, the Full Commission finds as a consequence of Plaintiff's admittedly compensable work related injury of July 8, 2008, Plaintiff has been physically incapable of work in any employment since April 23, 2010.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident on July 8, 2008 to her left knee while in the course and scope of her employment with Defendant-Employer. As a direct result of this admittedly compensable injury by accident, Plaintiff also sustained an injury to her lower back. N.C. Gen Stat. § 97-2(6).
2. Plaintiff's back injury is compensable in that it arose out of an admittedly compensable work related accident. N.C. Gen. Stat. § 97-2(6) (2001) defines a back injury as one arising "out of and in the course of the employment, and is the direct result of a specific traumatic incident of the work assigned." Caskie v. R.M. Butler Co.,85 N.C. App. 266, 268, 354 S.E.2d 242, 244.
3. Plaintiff has been out work pursuant to Dr. Hill's orders since April 23, 2010 to present as a direct consequence of the admittedly compensable work related injury of July 8, 2008; she has been therefore incapable of work in any employment. Russell v.Lowes Prod. Distrib., 108 N.C. App. 762, 425 S.E.2d 454, (1993). *Page 8 
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to the attorneys' fees approved herein below, Defendants shall pay compensation to Plaintiff in the amount of $221.34 per week beginning on April 23, 2010 and continuing until further Order of the Industrial Commission. All accrued compensation shall be paid in one lump sum.
2. Defendants shall pay for all medical expenses incurred or to be incurred by Plaintiff as a result of her compensable injuries when bills for same have been submitted to and approved by the Industrial Commission, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen Plaintiff's period of disability. Defendants shall pay for all past medical expenses which include but not limited to the medical expenses of Dr. Hill, Dr. Hnilica, and Dr. Olin.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due Plaintiff under Paragraph One of this Award is approved for Plaintiff's counsel and shall be paid by Defendants as follows: twenty-five percent of any compensation which has accrued shall be paid directly to Plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to Plaintiff's counsel.
4. Defendants shall pay the costs of this action.
This the __ day of October 2011. *Page 9 
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ DANNY L. McDONALD COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 *Page 1